## Commonwealth v. One Chevrolet Automobile.

*Liquor law—Seizure of automobile—Bailment—Surrender of car to owner —Valuation—Evidence of selling value.*

1. Where an automobile in the possession of a lessee under a bailment lease has been seized while employed in transporting liquor, and is claimed by the owner, the court may, in its discretion, determine whether the car shall be returned to the claimant or shall be condemned and ordered sold and the claimant remitted to the fund realized from the sale.

2. If the evidence shows that the owner's interest will not be protected by his being remitted to the proceeds of a sale, no sale will be ordered, and the car will be returned to him.

3. In order to determine this question, evidence should be produced as to the probable value of the car, rather than evidence of the average value of used cars of like make.

Claim for possession of seized car. Q. S. Washington Co., Aug. Sess., 1925, No. 47-*F*.

*Thomas L. Anderson*, Assistant District Attorney, for Commonwealth.

BROWNSON, P. J.—On Jan. 21, 1925, Mike Skribo purchased from Geisler Brothers, automobile dealers, a new Chevrolet touring-car, including, apparently, some extra equipment (being the vehicle described in the petition for condemnation), for $644, the purchase being made upon a bailment lease, the vendor or bailor retaining the title, and $224 being paid in cash on account of the consideration, and the balance, $420, to be paid, as "rental," in monthly instalments of $35 each, to bear interest after maturity. On May 17, 1925, there were unpaid and unmatured instalments owing upon the lease aggregating $315. It was provided that on any default in payment or breach of certain condition or covenant in the lease, all unpaid instalments might be declared due and payable. On Jan. 21, 1925, the lease and all title and rights of Geisler Brothers were assigned and transferred to the Motors Mortgage Corporation, the claimant in these proceedings.

On May 17, 1925, the automobile aforesaid was used and employed in and for the transportation, within Washington County, Pennsylvania, of intoxi-

cating liquors, to wit, thirty gallons of moonshine whiskey, in violation of the Act of March 27, 1923, P. L. 34, it being driven by, and being at the time in the possession and control of, Mike Skribo, Jr., a son of the Mike Skribo first above named. It was thereupon seized by a constable and delivered into the custody of the district attorney.

The Motors Mortgage Corporation has made a claim for this car and asks that the same be delivered up to it, while the Commonwealth asks for its condemnation.

From the testimony we are satisfied that the car was used for the unlawful transportation of liquors without the knowledge or consent of the Motors Mortgage Corporation, and the case, therefore, comes down to a question whether it should be delivered up to the claimant or should be condemned and sold, and the claimant should be turned over to the remedy of looking to the proceeds of such sale for the payment of the amount owing to it upon the lease, to wit, $315, upon which interest is claimed.

In Com. v. One Ford Truck, 85 Pa. Superior Ct. 188, it was held that in such a case as this the court is invested with discretion to determine whether the vehicle shall be returned to such a claimant or shall be condemned and ordered sold and the claimant remitted to the fund realized from the sale; and, as to the basis upon which such discretion is to be exercised, the meaning of the act was declared to be that the claimant's remedy is under sub-section B III of section 11, i. e., by looking to the proceeds of the sale, unless, under the evidence, "his interest . . . will not be protected by being remitted to the proceeds of a sale," in which event "no sale should be ordered and the vehicle should be returned to him." What is meant by "protection" of the claimant's interest in the vehicle is indicated by a quotation which the opinion makes from Jackson v. United States, 295 Fed. Repr. 620, to the effect that, if, in the opinion of the court, the property, if exposed to sale, will not bring enough to satisfy the claim owing to him, no sale should be ordered and the property should be unconditionally delivered up to him.

The question for determination, then, is whether the evidence is sufficient to satisfy the court that this car will not sell for enough to pay the mortgage company's claim.

The natural way of showing this would be for the claimant to have witnesses, possessed of knowledge of market values, inspect the car, and then call them to testify to its probable selling value at a sheriff's sale. This the claimant at first did not do. Its attorney stated that the reason this was not done was that the car was in the exclusive possession of the Commonwealth's officers, to which the assistant district attorney replied that the district attorney would not have refused a demand for an opportunity to have the car viewed by witnesses. (To this we may add that, if a district attorney should refuse such a request, the court would certainly compel him to accede to it.)

The only testimony on value originally offered was that of an officer of the claimant corporation who had never seen the car. The witness was asked to give "the average value of such an automobile [by which we understand to be meant the average value of used Chevrolet cars] at the present time." In answer to the question, he stated, under objection, that, according to the National Used Car Market Report, this would be approximately $260. He further testified that the present list price of such a car, new, was $525. (This figure is a fraction over 10 per cent. below the list price of the car itself, without extra equipment, in January, 1925, as given in the lease.)

Testimony to show merely what was the average of the prices brought by all the used Chevrolet cars that were sold within the United States during

the period (a month, or a quarter, or whatever it may be) covered by the National Used Car Market Report, even if we should assume that the witness meant that this referred to cars of the 1925 model, does not seem to us to be sufficient evidence of what *this* car would sell for. It cost $644, including equipment, when new in January, 1925, and when seized in May of the same year it was, according to the testimony of the officer who seized it, "practically new." It might, in condition, appearance, etc., be far above the average of the cars embraced in the report referred to, and the average number of miles traveled by them may have been far greater than the mileage which this car has made. It is not a question what other cars have sold for on the average, or what may be the practice of dealers as to what effect, in their dealings, they would give to the report mentioned, but what price, if this particular car were put up at public sale, would bidders probably be willing to pay for it, in view of its condition, appearance, etc.

Before the hearing concluded, however, counsel announced his desire to have the car inspected with a view to presenting better evidence, and it was finally agreed that he might, at a later date, present testimony as to the selling value of this particular car, with the right of the Commonwealth to rebut the same. Subsequently, a witness for the claimant examined the car, and it has been agreed by the district attorney that this witness shall be deemed to have testified that such value is $275. Nothing has been offered by the Commonwealth in rebuttal. We have, then, uncontradicted testimony to the effect that the value realizable from the car is not great enough to cover the claim of the Motors Mortgage Corporation, even without taking into account the expenses of the sale. This appears to bring the case within the rule laid down in Com. *v.* One Ford Truck, 85 Pa. Superior Ct. 188.

And now, Feb. 8, 1926, it is ordered that the motor-vehicle described in the petition for condemnation shall be delivered up by the district attorney to the Motors Mortgage Corporation, by permitting such person as it shall authorize to receive said vehicle on its behalf to remove the same from the place where it is now stored.                    From Harry D. Hamilton, Washington, Pa.